O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE POMERLEAU,<br><br>              Plaintiff,<br><br>   v.<br><br>HEALTH NET OF CALIFORNIA, INC.<br><br>              Defendant. | Case No. CV 11-01654 DDP (FMOx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND FOR ATTORNEY'S FEES AND COSTS**<br><br>[Dkt. No. 36] |

    Presently before the court is Plaintiff's Motion for Entry of Judgment and for Attorney's Fees and Costs. Having considered the submissions of the parties and heard oral argument, the court grants the motion.

**I. Background**

    Monique Pomerleau ("Plaintiff") had health insurance provided under a welfare benefit plan. This plan was governed by the Employment Retirement Income Security Act of 1974 ("ERISA"). Health Net of California ("Defendant") issued the insurance to Plaintiff under the benefit plan. (Stipulated Facts ("SF") ¶¶ 1-2.)

///

During a car accident in February 2010, Plaintiff was ejected from her vehicle. After she was airlifted to Arrowhead Regional Medical Center, it was determined that she had sustained many serious injuries including a subdural hematoma and several fractured bones. (SF ¶ 3.) Throughout the next five months, Plaintiff suffered many complications such as respiratory failure, pneumonia, an altered mental status, and the re-fracturing of her right clavicle. Plaintiff underwent several surgeries during this time. (SF ¶¶ 3-5.) Up until July 2010, "Defendant had paid for all benefits due under the plan for these admissions." (SF ¶¶ 3-5.)

From July to December 2010, Plaintiff was evaluated three separate times by a brain injury rehabilitation facility, Centre for Neuroskills ("CNS"), and it concluded that Plaintiff was a good candidate for post-acute brain injury programming. (SF ¶ 6.) In December of 2010, Defendant denied the request for coverage for treatment at CNS because CNS was an out-of-network facility and Plaintiff did not meet the criteria for coverage. (SF ¶¶ 7-8.) After Plaintiff made an appeal supported by Plaintiff's primary care physician, Defendant partially overturned the denial and offered Plaintiff coverage at two other rehabilitation facilities - Northridge Hospital and Rancho Los Amigos. (SF ¶¶ 10-11.)

Plaintiff spent several weeks at Rancho Los Amigos. On February 22, 2011, Rancho Los Amigos recommended a transfer to CNS and Plaintiff's primary care physician submitted a request for referral to Defendant. (SF ¶¶ 13, 15.) Plaintiff then filed a complaint in this action and served the Defendant on March 2, 2011. Two weeks later, on March 16, 2011, Defendant agreed to pay for Plaintiff's treatment at CNS.(SF ¶¶ 17-22.) The total amount

Defendant has paid is in excess of $650,000 (SF ¶ 23.)

Plaintiff asks that she be awarded attorney's fees and costs. (Mot. at 1.) Additionally, she asks that the court enter a judgment in her favor if needed to support such an award. (Mot. at 1.) Defendant argues that attorney's fees and costs are not appropriate because once it had agreed to provide the benefits, no further legal services were required and the action was moot. (Opp'n at 1-2.)

## II. LEGAL STANDARD

In an action brought under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party." 29 U.S.C. § 1132(g)(1). The Ninth Circuit has held that "this section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Carpenters Health and Welfare Trust for S. Cal. v. Vonderharr, 384 F.3d 667, 674 (9th Cir. 2004) (internal quotation marks and alterations omitted); see also Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984).

Further, the Supreme Court has held that either party can be awarded fees and costs as long the party requesting the fees "has achieved some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2152 (2010) (citations and internal quotations omitted); see also Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983)(holding that attorney's fees are not appropriate unless the claimant shows some degree of success on the merits in an action under the Clean Air Act). However, a "lengthy

3

inquiry into the question whether a particular party's success was substantial or occurred on a central issue" is not needed for courts to determine whether some success on the merits resulted from the outcome of the litigation. Hardt, 130 S. Ct. at 2158 (citations and internal quotations omitted).

Once courts determine whether a party has achieved success on the merits to some degree, courts must consider the Hummell factors. Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1119 (9th Cir. 2010). Under Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980), some of the factors to consider include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

**III. DISCUSSION**

    A.   Success on the Merits

As discussed above, the party seeking an award of attorney's fees need not prevail on the merits, but merely "achiev[e] some success, even if not major success." Hardt, 130 S. Ct. at 2157-58. In her Complaint, Plaintiff alleged that Defendant was obligated to pay for the treatment at CNS and requested that Defendant do so. (Compl. at 4:6-17, 6:1-3.) The Complaint was served on March 2, 2011. (SF ¶ 16.) Two weeks later, on March 16, 2011, Defendant agreed to pay for Plaintiff's treatment at CNS. (SF ¶¶ 17-22.) Plaintiff received the relief she sought in her Complaint, and thus the litigation process had "some success."

4

B.  Hummell Factors

Courts use the Hummell factors to determine whether a party has a right to fees, but no single Hummell factor "is necessarily decisive, and some may not be pertinent in a given case." Carpenters S. Cal. Admin. Corp. V. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984). "When [courts] apply the Hummell factors, [courts] must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans." McElwaine v. US West, Inc., 176 F.3d 1167, 1172 (9th Cir. 1999) (citations and internal quotations omitted).

1. Culpability or Bad Faith

Defendant argues that it had already agreed to pay the benefits before appearing in this action. (Opp'n at 10:2-3.) If this were true, it would constitute good faith and weigh against awarding attorney's fees. See Simonia, 608 F.3d at 1121. In Simonia, the insurer filed a counterclaim against the insured because the insurer believed it overpaid benefits by $22,309.51. Id. Later, after the insurer was given new, relevant information about the insured's benefits, the insurer dismissed its counterclaims. Id. The court found that this was in good faith and affirmed the district court's denial of attorney's fees.

Here, on December 24, 2010, Defendant denied coverage for treatment at CNS. (SF ¶ 8.) On January 2, 2011, Plaintiff's father submitted an appeal including a letter for referral to CNS written by Plaintiff's physician. (SF ¶¶ 9-10.) In response, Defendant partially overturned the initial denial, but Plaintiff was still

denied coverage for treatment at CNS. (See SF ¶ 11.)

On February 3, 2011, Plaintiff's counsel, Ms. Kantor, was quoted in a <u>New York Times</u> article discussing the health care cost of congresswoman Gabrielle Giffords' shooting. The story mentioned Plaintiff by name and described her "traumatic brain injury" and Defendant's refusal to pay for out-of-network rehabilitation services.[1] Plaintiff's counsel, Ms. Kantor, was quoted saying:

> We watched the congresswoman's care and we thought, how marvelous, but there are real people out there like Monique [Plaintiff] who don't get the same possibilities.

(SF, Ex. 8.)

On February 22, 2011, Rancho Los Amigos, Plaintiff's rehabilitation facility at the time, and Plaintiff's physician again recommended Plaintiff be transferred to CNS. (SF ¶ 15.) No new medical information was provided. Plaintiff then filed the Complaint and served Defendant on March, 2, 2011. On March 16, 2011, Defendant agreed to cover treatment for Plaintiff at CNS. (SF ¶ 17.)

Defendant considers this agreement to pay an "administrative exception" and asserts that it shows good faith. While it is possible Defendant would have agreed to pay without litigation, there is no persuasive evidence to support this assertion. Based on the timeline above, no new medical evidence was provided after the January 2, 2011, appeal. The only fact that changed was the

---

[1] "Monique Pomerleau, a mother of three from Northern California, suffered a traumatic brain injury in a traffic accident last February but has not yet undergone rehabilitation because her insurer, Health Net of California, said it lacked such services within the network. Her family has hired a lawyer to press the matter and recently received word that a 30-day rehabilitation program had been approved." (SF, Ex. 8.)

6

pressure of litigation and the related publicity. Thus, although Defendant may have decided to approve the transfer absent the lawsuit, the timing of the decision favors Plaintiff's position. Therefore, this factor weighs in favor of Plaintiff.

### 2. The Ability to Satisfy an Award of Fees

While the ability to pay an award of fees is not conclusive in and of itself, it does play a role in the Hummell analysis. See Simonia, 608 F.3d at 1122. It is not disputed that Defendant has the capability to satisfy a fee award. (See Mot. at 8:23-24; see also Opp'n at 10:18-19.) Thus, the court finds this factor weighs in favor of Plaintiff.

### 3. Deterrence

Defendant argues that a fee award would create incentives for insurance companies to deny coverage. (Opp'n at 11:9-11.) If companies, like Defendant's, face these "spurious fee awards," then these companies might choose to deny coverage and litigate any issues. (Opp'n at 11:8-11.)

This argument is speculative. Every coverage issue is likely to be resolved based upon its particular factual circumstances. Therefore, this factor is essentially neutral.

### 4. Benefits to ERISA Participants

The court agrees with Defendant that "Plaintiff's action was to benefit her, and did not raise any significant or novel legal issues." (Opp'n at 11:15-16.) Thus, this factor is neutral.

### 5. The Relative Merits of the Parties' Positions

In the Complaint, Plaintiff claims Defendant wrongfully and knowingly denied her benefits and treatment without properly investigating the merits of Plaintiff's claims. (Comp. ¶ 14.) She

7

requested that Defendant provide just compensation for all past benefits she was entitled to receive. (Comp. ¶ 21.) Defendant, in its Answer, denied these allegations. (Answer ¶¶ 14-21.) In addition, Defendant contends that it was never under any contractual obligation to pay because Plaintiff's health plan did not cover her for treatment at CNS. (Opp'n 7: 5-13.)

Although the merits were not considered in this case, the court recognizes the importance to liberally construe ERISA's remedial purposes in favor of protecting participants, like Plaintiff, in employee benefit plans. McElwaine, 176 F.3d at 1172. This liberal construction applies to attorney's fees as well. As the Supreme Court in Hensley stated:

> The fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)(internal citation omitted).

Here, Plaintiff requested in her Complaint that Defendant pay for her medical care. She received the relief she sought. Although Defendant disputes that it was obligated to pay for Plaintiff's care, as noted above, the timing of this decision favors Plaintiff's position.

The factors weigh in favor of a fee award for Plaintiff.

C.  CNS Treatment Not Covered Under Contract

Defendant argues that the treatment CNS provided Plaintiff was not covered under the policy. Defendant has stipulated that the remaining issue before the court concerns attorney's fees only. The

court therefore declines to address Defendant's contractual obligations further.

D. <u>Mootness</u>

Defendant claims that the action in this case should have been dismissed as moot once it had agreed to pay for the treatment at CNS on March 16, 2011. (Opp'n at 8:9-11.) The court disagrees. Plaintiff suffered broken bones and severe brain injuries. In light of the catastrophic nature of these injuries and Defendant's initial refusal to pay some of her fees, the court finds it reasonable that Plaintiff maintained this action through the present time. Additionally, Defendant did not file any pre-trial motions such as a motion to dismiss based on mootness.

E. <u>Reasonableness of Attorney's Fees</u>

To determine reasonableness of an attorney's hourly rate, courts look to the billing rates that are being charged in the relevant community. <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 946 (9th Cir. 2007) ("[T]he determination of a reasonable hourly rate is not made by reference to the rates actually charged by the prevailing party."). <u>But see</u> <u>United Steelworkers v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir. 1990) (prevailing market rates can be shown by affidavits from the party's attorney and other attorneys in the community). The "burden of submitting evidence of the hours worked and the rate paid" falls on the party seeking the award of attorney's fees. <u>Carson v. Billings Police Dep't</u>, 470 F.3d 889, 891 (9th Cir. 2006); <u>see also</u> <u>United Steelworkers</u>, 896 F.2d at 407.

In ERISA cases, a "lodestar" method is used to calculate attorney's fees. <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000). Using this approach, courts "multiply the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate." <u>McElwaine v. US West, Inc.</u>, 176 F.3d 1167, 1173 (9th Cir. 1999); see also <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

Here, Plaintiff is currently seeking $600 per hour for 140.5 hours totaling $84,300 in attorney's fees. (Decl. of Lisa Kantor, Ex. G at 9; Mot. at 11 n. 6.) Additionally, Plaintiff seeks to recover $1,004.66 for non-statutory costs such as messenger fees, printing costs, and mediation. (Mot. at 12:22-24.) The court finds that Plaintiff can recover most of the attorney's fees and the full $1,004.66 in non-statutory costs.

        1.   <u>Hourly Rate</u>

"District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by . . . applying the attorneys' current rates to all hours billed during the course of the litigation." <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 947 (9th Cir. 2007). Here, the court finds that Ms. Kantor's 2011 rate of $600 per hour can be applied to all attorney's fees in this action. Ms. Kantor has satisfied her burden of submitting evidence through her declaration, the declarations of two ERISA experts, and several recent cases awarding her fees of $550 to $600. Ms. Kantor has worked on ERISA cases since 1997 and has handled hundreds of ERISA cases. (Decl. of Lisa Kantor ¶¶ 2-3.) In December 2011, Judge Lew held that because she is a firm partner, Ms. Kantor's rate of $600 per hour was reasonable. (Decl. of Lisa Kantor, Ex. C at 7:10-13.)

10

In light of the evidence submitted, the court finds Ms. Kantor's fee of $600 per hour reasonable.

### 2. Hours Billed

Before discussing the number of hours billed, the court reiterates that it was reasonable for Plaintiff to maintain this action until now based on the severity of the injury. The court rejects Defendant's argument that no attorney's fees should be awarded after March 16, 2011, the date it agreed to pay for treatment. Thus, the court awards all reasonable hours billed from January 3, 2011, to the present.

Plaintiff is seeking $84,300 for 140.5 hours billed. (See Decl. of Lisa Kantor, Ex. G at 9; Mot. at 11 n.6.) Defendant disputes a number of these hours. The court will address these disputes as broken down by Defendant.

#### A. 10.7 Hours on Publicity

Defendant argues the 10.7 hours spent by Ms. Kantor towards publicity are not legal fees relating to benefits in this action. For two of these hours, Ms. Kantor updated her firm's blog entry. (Opp'n at 13:22-23, 14:1.) The court was unable to view the blog entry online. The court declines to find that the blog was related to obtaining benefits in this action. The court strikes the two hours updating the blog.

The remaining publicity hours went towards publicizing Plaintiff's story and the problems people may face receiving coverage under health insurance plans. These issues were raised in several media organizations such as a New York Times article and an

11

ABC News article. (See Decl. of Lisa Kantor, Ex. G at 1-2.) The publicity hours may have been effective advocacy, but they are not strictly related to the merits of the dispute in this action. The court strikes the remaining 8.7 hours billed towards publicity.

### B. 6.3 Hours Helping Plaintiff's Father Manage Plaintiff's Health Care

Helping Plaintiff's father manage Plaintiff's health care is not sufficiently related to obtaining benefits under the policy. The court strikes these 6.3 hours.

### C. Four Hours Handling Ancillary Insurance Coverage Issues

Defendant argues that because ancillary insurance coverage issues were never raised, these four hours should not be recoverable. There may well be ancillary insurance issues at play here. However, neither the Plaintiff's nor Defendant's briefs discuss these issues. The court has no basis to determine whether it was reasonable to spend four hours handling ancillary insurance coverage issues. Thus, the court strikes these four hours.

### D. Two Hours Helping to Locate New Placement for Plaintiff

These hours are unrelated to the benefits being sought in this action. There might be an issue regarding whether Defendant covers other treatment for the Plaintiff once she leaves CNS; however, that is a separate matter entirely.

This present action concerns Defendant covering Plaintiff's treatment at CNS under the benefits of her policy. Therefore, the court strikes these two hours.

### E. Seven Hours Spent Consulting and Visiting with Plaintiff and her Father

As it was reasonable for Ms. Kantor to maintain this action until now, she needed to continue apprising Plaintiff and her father of the situation and whether the treatment would continue to be covered. Over the span of a year, seven hours is not excessive. Thus, the court finds these seven hours reasonable and recoverable.

### F. 25 Hours Monitoring Plaintiff's Medical Condition

Defendant argues that these hours are not related to either legal work or the benefits at play in this action. Defendant is correct that monitoring Plaintiff's medical condition throughout her stay at CNS is not legal work per se. However, it is reasonable for Ms. Kantor to continue to be apprised of Plaintiff's medical condition given the severity of her injuries. The court finds that 12.5 hours are recoverable.

### G. Reviewing Photographs and Videotapes of Plaintiff

Plaintiff spent approximately three hours reviewing photographs and videotapes of Plaintiff. The court finds that there is an insufficient showing of the necessity of these hours. The court strikes these three hours.

### F. Defendant Is Not Entitled to Recover Fees

Defendant argues that Plaintiff improperly failed to dismiss the action after March 16, 2011, and the $18,000 in legal fees Defendant incurred after March 16, 2011, should be paid by Plaintiff for her failure to dismiss this action. The court

disagrees. For all the reasons discussed above, Plaintiff properly maintained the action through the present.

## IV. CONCLUSION

The court finds that Ms. Kantor's hours are recoverable except: (1) the 10.7 hours billed towards publicity; (2) the 6.3 hours spent helping Plaintiff's father manage Plaintiff's health care; (3) the four hours handling ancillary insurance coverage issues; (4) the two hours helping to locate a new placement for Plaintiff; (5) 12.5 hours spent monitoring Plaintiff's medical condition; and (6) the three hours spent reviewing photographs and videotapes. These exceptions add up to 38.5 hours and $23,100.

Based on the foregoing analysis, the Court GRANTS Plaintiff's Motion for Attorney's Fees and Costs and awards $62,204.66, $61,200 in attorney's fees for 102 hours billed, and $1,004.66 for non-statutory costs.

IT IS SO ORDERED.

Dated: November 15, 2012

DEAN D. PREGERSON
United States District Judge